UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| FREEDOM COALITION OF DOCTORS FOR CHOICE, <br><br> Plaintiff, <br> v. <br><br> CENTERS FOR DISEASE CONTROL AND PREVENTION and DEPARTMENT OF HEALTH & HUMAN SERVICES, <br><br> Defendants. | Civil Action No. 2:23-cv-00102 |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................. 1

FACTS .............................................................................................................................. 1

LEGAL STANDARD ....................................................................................................... 4

ARGUMENT .................................................................................................................... 6

    I.    **Plaintiff Has Demonstrated That Venue is Appropriate in This District** ................. 6

    II.    **Defendants' Unsupported Transfer Request Cannot Be Granted** .......................... 10

CONCLUSION ............................................................................................................... 11

CERTIFICATE OF SERVICE ....................................................................................... 12

# **TABLE OF AUTHORITIES**

**Cases**

*Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391 (S.D. Tex. 2011) .............................................. 5

*Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046 (S.D. Tex. 2000) ............................... 5

*Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612 (5th Cir. 2007) ....................... 5

*CIT Grp./ Commer. Servs. v. Romansa Apparel*, No. 3:02-CV-1954-P, 2003 WL 169208 (N.D. Tex. Jan. 21, 2003) ................................................................................................................. 5, 8

*Hertz Corp. v. Friend*, 559 U.S. 77 (2010) ............................................................................ 6, 7, 9

*Lonrho PLC v. Starlight Invs.*, LLC, No. H-11-02939, 2012 WL 256421 (S.D. Tex. Jan. 27, 2012) ........................................................................................................................................ 6

*McCaskey v. Cont'l Airlines Inc.*, 133 F. Supp. 2d 514 (S.D. Tex. 2001) .................................. 5, 8

*Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133 (9th Cir. 2004) .................................................... 5

*TGM Wind Servs., LLC v. Bartusek*, No. 3:16-CV-01007-N, 2016 WL 9527980, (N.D. Tex. Sep. 22, 2016) .............................................................................................................................. 6, 10

*Tinsley v. Comm'r*, No. 396-CV-1769-P, 1998 WL 59481 (N.D. Tex. Feb. 9, 1998) ................... 5

*Utah v. Walsh*, No. 23-cv-016-Z, 2023 WL 2663256 (N.D. Tex. Mar. 28, 2023) ....................... 10

*Wilson v. Belin*, 20 F.3d 644 (5th Cir. 1994) ................................................................................ 5

**Statutes**

5 U.S.C. § 552 (a)(4)(B) ............................................................................................................ 4, 6

5 U.S.C. § 552(a)(4)(C) ................................................................................................................. 2

5 U.S.C. § 552(a)(6)(B)(i) ............................................................................................................. 2

## INTRODUCTION

Plaintiff Freedom Coalition of Doctors for Choice ("**Freedom Coalition**" or "**Plaintiff**") files this memorandum of law in opposition to Defendants Centers for Disease Control and Prevention ("**CDC**") and the U.S. Department of Health and Human Services' ("**HHS**") (collectively, "**Defendants**") Motion to Dismiss. (Dkt. 15.)

The basis for Defendants' Motion is simply that they dislike the purpose for which Plaintiff was founded—to wit, to obtain v-safe free-text data—and they dislike having to litigate this case in this Court. To that end, Defendants have filed their instant Motion, making the baseless allegation that Plaintiff does not actually have a principal place of business in this District and Division, and requesting that the Court dismiss this action or transfer it to the District of Columbia. The Court should deny Defendants' latest attempt to delay resolution of this case and to waste judicial and party resources.

## FACTS

Plaintiff is a not-for-profit corporation that was formed and exists exclusively for the purpose of obtaining and disseminating to the public the v-safe free-text data. (Pl.'s Complaint, Dkt.1 ¶¶ 14, 16, 19–27.) The Freedom Coalition is made up of medical and public health professionals, scientists, and journalists. *Id.* It takes no position on the v-safe free-text data other than that it should be made available to the public and scientific community as soon as possible. *Id.*

Consistent with Plaintiff's mission Plaintiff filed a Freedom of Information Act ("**FOIA**") request for the free-text v-safe data on January 3, 2023. (Dkt. 1 at Exhibit B.) On January 12, 2023, CDC issued its final determination denying the request. (Dkt. 1 at Exhibit D.) The following day, January 13, 2023, Plaintiff submitted an appeal challenging FDA's improper withholding of

responsive records. (Dkt. 1 at Exhibit E.) On January 17, 2023, CDC and HHS acknowledged the appeal and placed it in the processing queue. (Dkt. 1 at Exhibit F.)[1]

After CDC and HHS failed to make a final determination on the appeals within the time limits prescribed by FOIA, *see* 5 U.S.C. § 552 (a)(6)(B)(i), Plaintiff filed a Complaint in this Court on June 16, 2023. (Dkt. 1.) Because there are no material facts in dispute, Plaintiff filed a Motion for Summary Judgment on July 11, 2023. (Dkt. 8.)

Pursuant to the Court's Local Rules, Defendants' response to the Motion for Summary Judgment was due within 21 days, which was August 1, 2023. Pursuant to 5 U.S.C. § 552 (a)(4)(C), Defendants' answer to the Complaint was due within thirty days of service of the Complaint, which was August 7, 2023. Defendants did not respond to the Motion for Summary Judgment. Instead, at close of business the day before, Defendants filed a Motion to delay adjudication of this case predicated on a frivolous venue argument. (Dkt. 14.) Subsequently, on August 7, 2023, Defendants filed this Motion to Dismiss, raising the same spurious allegations. (Dkt. 15.)

Plaintiff's Complaint makes plain that venue is appropriate in this Court. (Dkt.1 ¶¶ 14, 16, 19–27.) Freedom Coalition's headquarters is and has only been located at 600 S Tyler St, Suite 2100 #177, Amarillo, TX 79101, and its most recent board meeting was held on March 29, 2023 at its headquarters in Amarillo, TX, which is the usual and customary location of its board meetings. (*Id.*) The Freedom Coalition has six board members. (*Id.*) Three of its board members reside in Amarillo, Texas (Drs. Pia and Rolf Habersang, and Dr. Deborah Moore), and a fourth works in Amarillo, Texas (Dr. Richard Bartlett). (*Id.*)

---

[1] On March 31, 2023, Plaintiff also appealed the CDC's denial of the fee waiver (Dkt. 1 at Exhibit G) which HHS acknowledged on April 3, 2023. (Dkt. 1 at Exhibit H.)

One of these Board Members, Dr. Richard Bartlett, is an emergency room physician practicing in Amarillo and Lubbock, Texas. (*Id.*) Dr. Bartlett identified and advocated for the use of budesonide in the treatment of COVID-19, which has become a treatment option in hospitals across the country, including Odessa Medical Center and Odessa Regional Medical Center. (*Id.*)

To put Defendants' baseless arguments to bed, attached in support to this Memorandum is the declaration of Dr. Richard Barlett, M.D., who formed the Coalition in December 2022. He formed the Freedom Coalition after he learned that Defendants were obstructing access to the v-safe data and hiding it from the public because he was deeply concerned by their actions. (*See* Bartlett Dec., App., Dkt. 20 ¶ 3). He then connected with five other medical professionals in West Texas, specifically in Amarillo and/or Lubbock. (*Id.* ¶ 4). The six of them took steps—in December 2022—to form the Freedom Coalition. (*Id.* ¶ 5). The sole purpose of the organization was and is to obtain the v-safe data from Defendants, and then to provide it to the public. (*Id.* ¶ 6).

The Freedom Coalition retained counsel and directed that counsel to serve a Freedom of Information Act Request on the Centers for Disease Control for the v-safe free-text data in January 2023. (*Id.* ¶ 7).

The Freedom Coalition also took steps to formally incorporate the organization in January 2023 with the Texas Secretary of State, and they rented a virtual office in Amarillo for the purpose of serving as corporate headquarters for the organization. (*Id.* ¶ 8). The Freedom Coalition has no employees. *Id.* It is solely run, and decisions are solely made, by its Board of Directors. *Id.*

All board meetings for the Freedom Coalition have occurred from and in Amarillo, Texas. (*Id.* ¶ 9). All votes cast by the Board took place at those meetings (and the only way in which decisions are or have been made for the organization are through a vote of the Board of Directors). (*Id.*) That included the votes to authorize the FOIA request, to appeal the FOIA denial, and to

instruct counsel to file litigation. (*Id.*) Those votes were unanimous. (*Id.*) No board meetings have been held anywhere other than Amarillo, Texas. (*Id.*) The only body that makes or directs any actions for the Freedom Coalition are the Board of Directors for the Freedom Coalition, by and through its six board members. (*Id.* ¶ 10).

And, to drive home the point that the Freedom Coalition is a West Texas group, Dr. Bartlett attested that three of the six board members of the Freedom Coalition reside and work in Amarillo, Texas (Drs. Pia and Rolf Habersang, and Dr. Deborah Moore). (*Id.* ¶ 11). Dr. Barlett works in Amarillo and Lubbock, Texas, and resides in Midland, Texas. (*Id.*) The two other board members work and reside in Lubbock, Texas (Camilla Glenn, APRN, FNP-C and Dr. Paul Thomas). (*Id.*)

The only place that serves as the Freedom Coalition's headquarters, and the only place that decisions are or have been made from, is Amarillo, Texas. (*Id.* ¶ 12).

Moreover, the Certificate of Filing of Certificate of Formation for the organization is clear that it is headquartered in Amarillo, Texas—collectively the most convenient location for the board members to meet since three of the board members live in Amarillo and a fourth board member works there. (Dkt. 1-7 at 93).

## LEGAL STANDARD

The specific venue provision for FOIA actions states, in pertinent part:

> On complaint, the district court of the United States in the district in which the complainant resides, or **has his principal place of business,** or in which the agency records are situated, or in the District of Columbia, has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant.

5 U.S.C. § 552 (a)(4)(B) (emphasis added).

A party may move to dismiss an action based on improper venue pursuant to Rule 12(b)(3). *See* Fed. R. Civ. P. 12(b)(3). Once a defendant challenges venue, the plaintiff has the burden of

4

demonstrating that the chosen venue is proper. *Am. Gen. Life Ins. Co. v. Rasche*, 273 F.R.D. 391, 396 (S.D. Tex. 2011) (citation omitted). "On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff." *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 F. App'x 612, 615 (5th Cir. 2007) (per curiam) (citations omitted). Thus, a plaintiff may show that venue is proper by "setting forth facts that taken as true would establish venue." *Bigham v. Envirocare of Utah, Inc.*, 123 F. Supp. 2d 1046, 1048 (S.D. Tex. 2000) (*citing Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994)).

Unlike a Rule 12(b)(6) motion, however, a court may consider extrinsic materials, including affidavits and other materials, in determining whether venue is proper. *See Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004); *CIT Group/Commercial Servs., Inc. v. Romansa Apparel, Inc.*, No. 3:02-CV-1954-P, 2003 WL 169208, at *2 (N.D. Tex. Jan. 21, 2003). Courts will allow a plaintiff to carry this burden by establishing facts, taken as true, that establish venue. *McCaskey v. Cont'l Airlines Inc.*, 133 F. Supp. 2d 514, 523 (S.D. Tex. 2001); *Wilson v. Belin*, 20 F.3d 644, 648 (5th Cir. 1994) (internal citation omitted). The Court will also "accept uncontroverted facts contained in the plaintiff's complaint as true, and resolve any conflicts in the parties' affidavits in the plaintiff's favor." *McCaskey*, 133 F. Supp. 2d at 523; *see also Tinsley v. Comm'r*, No. 396-CV-1769-P, 1998 WL 59481, at *2 (N.D. Tex. Feb. 9, 1998) ("[M]otions to dismiss for improper venue under 12(b)(3) are generally resolved through submission of affidavits and declarations and discovery materials.").

Here, that means that the Court can consider the Complaint, or if that is not enough, it can rely on Dr. Barlett's declaration. Either way, the result is the same.

"To prevail on a motion to dismiss for improper venue, a defendant must present facts that will defeat a plaintiff's assertion of venue." *Lonrho PLC v. Starlight Invs.*, LLC, No. H-11-02939,

5

2012 WL 256421, at *2 (S.D. Tex. Jan. 27, 2012) (citation omitted). Defendants have offered no such facts here.

## ARGUMENT

I. **Plaintiff Has Demonstrated That Venue is Appropriate in This District.**

Defendants contend that Plaintiff has not shown that venue is appropriate in this District, but appear to acknowledge that this alleged failure to establish venue is only plausible if all of Plaintiff's well-pled allegations in the Complaint are ignored. Defendants not only ask this Court to join them in ignoring the facts, they also misread the applicable standard.

The plaintiff in a FOIA litigation may bring a case: (1) in the "district in which the complainant resides, or **has [its] principal place of business**"; (2) in the district where the agency records are situated; or (3) in the District of Columbia. 5 U.S.C. § 552 (a)(4)(B) (emphasis added). A principal place of business refers "to the place where a corporation's officers direct, control, and coordinate the corporation's activities. . . . And in practice it should normally be the place where the corporation maintains its headquarters--provided that the headquarters is the actual center of direction, control, and coordination, *i.e.*, the 'nerve center.'" *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010).

Plaintiff's burden here is not strenuous—it is required only to present facts that, when taken as true, would establish venue. *TGM Wind Servs., LLC v. Bartusek*, No. 3:16-CV-01007-N, 2016 WL 9527980, at *1–2 (N.D. Tex. Sep. 22, 2016). In this case, Plaintiff has more than sufficiently met its burden and has done so with far more than "bare allegations." (Dkt. 15 at 11).

Venue is appropriate in this Court because Plaintiff, a not-for-profit corporation, has its principal place of business within this District and Division in Amarillo, Texas. Plaintiff has identified when, where, why, and by whom it was organized, the names of its Board Members (as

well as their professions, residential addresses, and in some cases business addresses and employers), as well as the date and location of board meetings since its formation. (Dkt. 1 ¶¶ 14, 16, 19–27.) All of these items are tied to this District and Division.

Plaintiff's allegations—along with the Texas Secretary of State's Certificate of Filing of Certificate of Formation—establishes that the Freedom Coalition's headquarters is in Amarillo, and that should be the end of the story. (Dkt. 1 ¶ 16; Dkt. 1-7 at 93). After all, a dictionary definition of "headquarters" is "the administrative center of an enterprise,"[2] which is, literally, the same as the nerve center articulated in *Hertz*, 559 U.S. at 92–93. But Defendants argue that the office occupied is a virtual office, and Defendants wrongly suggest and speculate that more inquiry is needed. It should not be a surprise, though, that a virtual office is a headquarters for an organization that only consists of six board members, with no employees, and that *only* exists for the limited purpose of obtaining data Defendants continue to improperly hide from the public. (Dkt. 1 ¶¶ 19, 21). The degree of ownership by the plaintiff of the property where a board meeting is conducted says nothing about whether the entity meets there.

Defendants, on the other hand, have not even come close to meeting their burden of presenting facts to defeat Plaintiff's assertion of venue. Instead, Defendants either point to facts in the record supporting that venue is in this District or lob baseless accusations about Plaintiff while insisting their hypotheticals raise questions about venue. One of Defendants' arguments is that Plaintiff was "created at around the same time it filed its FOIA request" for the v-safe free-text data. (Dkt. 15 at 13.) No discovery is needed on this point as this is true and wholly appropriate. Organizations are permitted to form for whatever reason they desire. Here, Plaintiff has been clear

---

[2] https://www.merriam-webster.com/dictionary/headquarters (last accessed 8/24/2023).

7

since its inception that it was formed and exists for the sole purpose of obtaining and disseminating to the public the v-safe free-text data. (Dkt. 1 ¶ 14.) Dr. Bartlett confirms this in his Declaration—a fact that is also plastered on the homepage of the organization's website. (Bartlett Dec., App., Dkt. 20 ¶ 6.) Thus, it makes good sense that Plaintiff filed its request around the time it was formed as it was carrying out its purpose. Contrary to what Defendants imply, organizations need not be a certain age in order to file FOIA requests or to litigate those requests when the sought-after information is unlawfully withheld. Defendants' attempts to engraft requirements onto 5 U.S.C. § 552 for organizations that submit FOIA requests must fail.

Defendants next speculate that Plaintiff is not actually conducting its business in this District. This is flatly contradicted by Dr. Bartlett's Declaration, wherein he attests that Plaintiff is run solely by its Board of Directors, all of its Board of Directors meetings have occurred in Amarillo, Texas, the votes conducted at these Board meetings are the only way that Plaintiff makes decisions, all votes by its Board Members have been unanimous, and that "**[n]o board meetings have been held anywhere other than Amarillo, Texas.**" (Bartlett Dec., App., Dkt 20 ¶ 9.) He likewise confirms that "[t]he _only_ place that serves as the Freedom Coalition's headquarters, and the only place that decisions are or have been made from, is Amarillo, Texas." (*Id.* ¶ 12) (Emphasis added.) Accepting Plaintiff's allegations as true and resolving all conflicts in its favor, it is plain that Plaintiff has established that its principal place of business is, in fact, in this District. *See Romansa Apparel*, 2003 WL 169208, at *2. While Dr. Bartlett's declaration is unnecessary to resolve Defendants' Motion, it confirms that the principal place of business for the Freedom Coalition is Amarillo and thus defeats Defendants' claims. *See McCaskey*, 133 F. Supp. 2d at 523.

Although Defendants contend that the addresses of Plaintiff's Board Members are irrelevant, Defendants' contention regarding business being conducted elsewhere, paradoxically,

8

makes Plaintiff's Board Members' residences and workplaces relevant. As noted in Plaintiff's Opposition to Defendants Rule 56(d) Motion, aside from its headquarters, the *only* other place where Plaintiff's Board Members could possibly conduct business involving Plaintiff—such as answering telephone calls or emails related to Plaintiff—would be their work or home addresses, most of which are likewise located in Amarillo, Texas. Thus, by *any* measure, Plaintiff's principal place of business—the place where its officers direct, control, and coordinate Plaintiff's activities and the "actual center of direction, control, and coordination, *i.e.*, the 'nerve center'"—is within the boundaries of this District and Division. *Hertz*, 559 U.S. at 92–93.

Finally, Defendants contend that Plaintiff has not shown that it has conducted enough business at its headquarters to convince Defendants that venue is appropriate. For example, Defendants suggest that Plaintiff needed to show it has staff working on site at its headquarters. This is unreasonable, of course, since the organization has no staff or employees. (Bartlett Dec., App., Dkt 20 ¶ 8.) This makes sense when, boiled down, the Freedom Coalition consists of six West Texas physicians and other medical providers who are very concerned that Defendants are engaged in a prolific effort to hide information from the public—the Freedom Coalition is merely the result of their efforts to obtain that information. Bartlett Dec., App., Dkt 20 ¶¶ 1–12.).

The number of times its Board Members meet, how often they conduct business, with whom they confer, or whether Plaintiff has employees does not change the fact that Plaintiff is headquartered in Amarillo; and any business that Plaintiff has conducted or will conduct in the future, regardless of the amount, is in Amarillo, Texas. Plaintiff is a simple entity with a straightforward purpose. It does not have, nor is it required to have, full-time employees working in an office to accomplish its purpose: to obtain v-safe free-text data through FOIA. In fact, the

9

amount and number of meetings is just a function of how obstructionist Defendants continue to be about releasing public records.

Likewise, Plaintiff does not need to show that a certain threshold amount of business—sufficient to Defendants' liking—has taken place or is taking place in order to establish that venue is appropriate in this District. Instead, the Freedom Coalition need only show facts that, when taken as true, would establish venue (which it has done). *TGM Wind Services*, 2016 WL 9527980, at *1–2. Defendants can cite no case showing otherwise.

In an implicit recognition of their failure to overcome Plaintiff's assertion of venue, Defendants filed a separate motion requesting extensive discovery "in the event their motion to dismiss [on the ground of venue] is denied." (Dkt. 14 at 7.) But that motion is baseless, too. As is more fully explained in Plaintiff's response to that motion, (Dkt. 18), Defendants should not be permitted a wide-ranging and pointless fishing expedition intended to harass the organization's board members for choosing to file in this Court—the federal court in the city where they live, work, and host board meetings.

## II. Defendants' Unsupported Transfer Request Cannot Be Granted.

Defendants title their motion a "Motion to Dismiss," yet toward the end of their brief also suggest that "it may be appropriate to transfer this case to the United States District Court for the District of Columbia." (Dkt. 15 at 14.) If Defendants desire to transfer this case to a different District, the appropriate motion would be a motion to transfer venue. And to succeed on such a motion, Defendants would have had to demonstrate that a number of different factors are satisfied (which they know they cannot meet). *See Utah v. Walsh*, No. 23-cv-016-Z, 2023 WL 2663256, *2 (N.D. Tex. Mar. 28, 2023) ("Courts are required to assess four private interest factors and four public interest factors pertinent to a transfer motion."). Unsurprisingly, Defendants have made no

attempt to address these factors. In light of Defendants' failure to offer either legal arguments or facts in support of their request to transfer, Plaintiff is unable to respond this request and therefore requests that the Court deny Defendants' Motion to the extent it requests a transfer of this case.

## CONCLUSION

Plaintiff has established that venue is appropriate because it has provided more than sufficient allegations in the Complaint—and now evidence in the form of Dr. Bartlett's declaration—that its principal place of business is situated in Amarillo, Texas. Plaintiff therefore requests that the Court deny Defendants' Motion to Dismiss and further deny Defendants' Motion to the extent it requests a transfer of this case out of this District.

Dated: August 28, 2023

Respectfully submitted,

/s/ *John C. Sullivan*
John C. Sullivan
**S|L LAW PLLC**
Texas Bar Number: 24083920
610 Uptown Boulevard, Suite 2000
Cedar Hill, Texas 75104
(469) 523–1351 (v)
(469) 613-0891 (f)
john.sullivan@the-sl-lawfirm.com

Christopher Wiest*
Chris Wiest, Atty at Law, PLLC
25 Town Center Boulevard, Suite 104
Crestview Hills, KY 41017
(513) 257-1895 (c)
(859) 495-0803 (f)
chris@cwiestlaw.com

* *pro hac vice*

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

    I hereby certify that on August 28, 2023, a true and correct copy of this Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss was served by CM/ECF on all counsel or parties of record.

/s/ *John C. Sullivan*
John C. Sullivan