IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| FREEDOM COALITION OF DOCTORS FOR CHOICE,<br><br>Plaintiff,<br><br>v.<br><br>CENTERS FOR DISEASE CONTROL AND PREVENTION, *et. al.*,<br><br>Defendants. | 2:23-CV-102-Z |

**ORDER**

Before the Court are Defendants' Motion to Defer Consideration or to Deny Plaintiff's Motion for Summary Judgment under Federal Rule of Civil Procedure 56(d), or in the Alternative, for an Extension to Respond (ECF No. 14) ("Rule 56 Motion") and Motion to Dismiss or Transfer Venue (ECF No. 15) ("Motion to Dismiss"). For the following reasons, the Motion to Dismiss is **DENIED** and the Rule 56 Motion is **GRANTED IN PART** and **DENIED IN PART**.

**BACKGROUND**

When the first COVID-19 vaccine became available in December of 2020, the Centers for Disease Control and Prevention ("CDC") launched a massive safety monitoring program called "v-safe." Because of the rapid and extensive rollout of the vaccine, CDC used v-safe to quickly collect critical health data for symptoms, adverse events, and safety issues experienced by those who received the vaccine. V-safe collected two types of data: (1) check-the-box options and (2) free-text entries. Plaintiff alleges the bifurcated data collection method was designed to restrict reports of adverse events to the free-text entries, suppress the number of reported adverse events, render that data difficult to standardize, and thus curate a misleading health and safety profile of the COVID-19 vaccine. Plaintiff seeks to obtain and disseminate the free-text data to the public.

Plaintiff "is a nonprofit that exists for the sole purpose of obtaining and disseminating to the public the data from the free-text fields in the CDC's v-safe database." ECF No. 1 at 7. The group is comprised of medical professionals including practitioners and educators. *Id.* The nonprofit is a registered Texas Domestic Non-Profit Corporation with its sole headquarters address listed as 600 S Tyler Street, Suite 2100, Amarillo, Texas 79101. *Id.* at 6; ECF No. 1-7 at 93.

On January 3, 2023, Plaintiff submitted a FOIA request to the CDC and United States Department of Health and Human Services ("HHS") for the free-text field data and requested expedited processing and waiver of fees pursuant to 5 U.S.C. §§ 552(a)(6) and (a)(4). *See* ECF No. 1-2. The CDC denied expedited processing and waiver of fees and thereafter issued a final determination to withhold the free-text data based on the existence of personal identifiable information and lack of resources to manually review the data. ECF Nos. 1-3, 1-4. Plaintiff appealed each denial. ECF Nos. 1-5, 1-7. When CDC and HHS did not resolve the appeals within the time limits prescribed by 5 U.S.C. §§ 552(a)(6)(A)(ii) and (a)(6)(B)(i), the matter became immediately justiciable.

Plaintiff filed its complaint on June 16, 2023. ECF No. 1. Then, Plaintiff filed a Motion for Summary Judgment on all claims on July 11, 2023. ECF No. 8. Defendants filed their Rule 56 Motion on July 31, 2023, and their Motion to Dismiss on August 7, 2023. ECF Nos. 14, 15. The Court addresses the Motion to Dismiss first before turning to the Rule 56 Motion and alternative request for extension of time to respond to Plaintiff's Motion for Summary Judgment.

Legal Standard

*A. Motion to Dismiss*

Under Rule 12(b)(3), a party may move to dismiss a claim for improper venue. Fed. R. Civ. P. 12(b)(3). The Fifth Circuit has not ruled on which party bears the burden on a 12(b)(3) motion, but "most district courts within this circuit have imposed the burden of proving that venue

is proper on the plaintiff once a defendant has objected to the plaintiff's chosen forum." *Galderma Labs., L.P. v. Teva Pharm. USA, Inc.*, 290 F. Supp. 3d 599, 605 (N.D. Tex. 2017) (collecting cases). When deciding a Rule 12(b)(3) motion, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. *Braspetro Oil Servs. Co. v. Modec (USA), Inc.*, 240 Fed. Appx. 612, 615 (5th Cir. 2007). "[T]he court may find a plausible set of facts by considering any of the following: (1) the complaint alone; (2) the complaint supplemented by the undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Ambraco, Inc. v. Bossclip B.V.*, 570 F.3d 233, 238 (5th Cir. 2009). "[A]ffidavits and other evidence submitted by the non-moving party are viewed in the light most favorable to that party," *Mem'l Hermann Health Sys. v. Blue Cross Blue Shield of Tex.*, 2017 WL 5593523, at *4 (S.D. Tex. November 17, 2017) (citing *Ambraco*, 570 F.3d at 238), and affidavit testimony may be sufficient to establish venue facts, *see Homer v. AEP Texas, Inc.*, 2022 WL 11964708, at *6 (N.D. Tex. October 20, 2022). If venue is lacking, district courts are instructed to "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406.

Title 5, Section 552 of the United States Code governs where an agency may be subject to suit. 5 U.S.C. § 552. A FOIA requestor may bring suit in: (1) the district in which the complainant resides; (2) the district in which the complainant has his principal place of business; (3) the district in which the agency records are situated; or (4) the District of Columbia. *See* 5 U.S.C. § 552(a)(4)(B). Only a court in one of these categories has "jurisdiction to enjoin the agency from withholding agency records and to order production of any agency records improperly withheld from the complainant." *Id.*; *see also Stephenson v. I.R.S.*, 629 F.2d 1140, 1142 n.4 (5th Cir. 1980); *Weber v. Coney*, 642 F.2d 91, 93 (5th Cir. 1981) ("FOIA places jurisdiction in the judicial district where the complainant resides, not to particular courts within that district.").

3

### B. *Rule 56 Motion to Deny or Defer Consideration*

"Rule 56(d) functions as a safe harbor that has been built into the rules so that summary judgment is not granted prematurely." *McDougall v. Binswanger Mgmt. Corp.*, No. 3:10-CV-2563-D, 2023 WL 1109551, at *3 (N.D. Tex. April 3, 2012) (internal marks omitted). "[A] district court may defer or deny a summary judgment motion, or allow additional time for discovery, if a 'nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition.'" *January v. City of Huntsville*, 74 F.4th 646, 651 (5th Cir. 2023) (quoting Federal Rule of Civil Procedure 56(d)). A Rule 56(d) proponent must "show (1) why [it] needs additional discovery and (2) how that discovery will create a genuine issue of material fact." *Id.* (internal marks omitted).

In other words, the proponent must set forth: (1) "a plausible basis for believing that specified facts, susceptible of collection within a reasonable time frame, probably exist"; and (2) "indicate how the emergent facts, if adduced, will influence the outcome of the pending summary judgment motion." *Id.* (internal marks omitted). "[V]ague assertions that additional discovery will produce needed, but unspecified, facts" is insufficient. *Id.* (internal marks omitted). The proponent "must also have diligently pursued discovery." *Id.* (internal marks omitted).

### C. *Rule 6 Extension of Time to Respond*

Rule 6(b) of the Federal Rules of Civil Procedure states in relevant part: "When an act may or must be done within a specified time, the court may, for good cause, extend the time . . . if a request is made before the original time or its extension expires." FED. R. CIV. P. 6(b). The "permissive language of Rule 6(b)" evinces the district court's discretion. *McCarty v. Thaler*, 376 Fed. Appx. 442, 443 (5th Cir. 2010).

APPLICATION

A. *Defendants' Motion to Dismiss or Transfer for Improper Venue is DENIED*

Defendants contest that Plaintiff has not established a principal place of business or that the agency records Plaintiff seeks are located in this district and division. *See* ECF No. 15 at 9–10. Thus, Defendants contends "the Amarillo Division of the Northern District of Texas is not an appropriate venue for this action." *Id.* Accordingly, Defendants move this Court to dismiss Plaintiff's complaint in its entirety or, alternatively, to transfer the case to a proper forum.

The nature of Defendants' argument against Plaintiff's residence, vis-à-vis principal place of business, is one of degree and not kind. In essence, Defendants argue that Plaintiff's Amarillo, Texas, office space — indeed its *only* such space — is inadequately staffed, equipped, and utilized, amounting to a façade, a "bare office with a computer," or a "virtual" space. ECF No. 15 at 12, 13. Such a space, Defendants argue, is insufficient to support venue. The Court disagrees. Because the Court determines that Plaintiff's principal place of business is in Amarillo, Texas, venue is proper. Accordingly, neither dismissal nor transfer is warranted.

   1. *Plaintiff's principal place of business is in Amarillo, Texas*

A corporation's "residence" is "the judicial district in which it maintains its principal place of business." 28 U.S.C. § 1391(c)(2).[1] A corporation's "principal place of business" is the place where a corporation's officers direct, control, and coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010); *Swindol v. Aurora Flight Sciences Corp.*, 805 F.3d 516 (2015). In other words, it is the location of the corporation's "nerve center" — which will normally be the place where the corporation maintains its headquarters, provided the headquarters

---

[1] Defendants correctly note that venue for FOIA actions is governed by Title 5 U.S.C. Section 552(a)(4)(B), the specific FOIA venue provision, but Section 1391(c) applies to any specific venue statute permitting venue where the plaintiff resides. *See* ECF No. 15 at 10.

5

is the *actual* center of direction, control, and coordination. *Hertz*, 559 U.S. at 93. The nerve center is a singular place, such that when multiple options are considered, it is the "main," "prominent," or "leading" place. *Id.*

Under *Hertz*, Amarillo, Texas, is the nerve center for Plaintiff's nonprofit activities. While Defendants insist that Plaintiff's assertion of residence is largely "conclusory," ECF No. 15 at 1, Plaintiff offers several key facts. First, Plaintiff's only location is in Amarillo, Texas — as evidenced by the Texas Secretary of States's Certificate Filing of Certificate of Formation and Dr. Bartlett's Declaration, wherein he testifies that Plaintiff is run exclusively by its Board of Directors and all meetings of the Board have occurred in Amarillo, Texas. ECF No. 19 at 7–9. Second, Plaintiff has no officers that make daily governing decisions; all authority is delegated to the Board of Directors who act exclusively during board meetings. *Id.* at 3. And third, "[n]o board meetings have been held anywhere other than Amarillo, Texas." *Id.* at 4; ECF No. 20 at 2. Accepting Plaintiff's alleged facts as true, its nerve center is in Amarillo, Texas.

  2. *Plaintiff's virtual office space is not dispositive*

Defendants make much of Plaintiff's office space. *See* ECF No. 15 at 12, 13 (characterizing it as a "bare office with a computer" or a "virtual" office). True, *Hertz* envisions that a party could manipulate jurisdiction by maintaining an "alleged nerve center [that] is nothing more than a mail drop box, a bare office with a computer, or the location of an annual executive retreat." *Hertz*, 559 U.S. at 97. But Defendants mistake the necessary for the sufficient. Though a "bare office with a computer" is indeed a "red flag" under *Hertz* for possible venue manipulation, the inquiry does not end there. *Id.*; ECF No. 15 at 8.

Applying *Hertz*: if the record reveals attempted manipulation by, *e.g.*, employing a façade to secure a preferred jurisdiction, "courts should instead take as the 'nerve center' the place of *actual* direction, control, and coordination, in the absence of such manipulation." *Id.* (emphasis

6

added). But if a court determines there is no attempted manipulation of a corporation's true principal place of business, "red flags" are just false flags. These proxies for the nerve center, if seemingly suspect, require a closer look to determine whether a party is attempting to manipulate jurisdiction.

This is especially true for a nonprofit like Plaintiff, which is mission-oriented, *see* ECF No. 1 at 5 (Freedom Coalition's "sole purpose" is to obtain and disseminate the free-text data), and that mission is not geographically particularized, *see* Freedom Coalition of Doctors for Choice, Current Members List, https://drsforchoice.org (last visited October 31, 2023) (listing members from, *e.g.*, California, Kansas, New Jersey, and Canada). A nonprofit's purpose may not be served by maintaining a physical office — indeed, doing so may be a waste of limited resources. Courts must "evaluate the corporation's 'nerve center' in the context of the corporation's organization" and "consider substance over form." *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 412 (5th Cir. 1987). "Because the question of principal place of business is so fact-intensive" — especially "when the activities of the corporation are . . . management-oriented as opposed to labor intensive activities" — the typical "considerations may be expanded or contracted in any given case." *Id.* at 412, 412 n.15. Thus, it is unsurprising that the Plaintiff corporation does not maintain its own brick-and-mortar office space but instead utilizes a virtual space.

The record here reveals no attempt to manipulate jurisdiction. Rather, the record explains why Amarillo is the location of the Plaintiff corporation: all members reside and work in Amarillo or Lubbock, Texas. *See* ECF No. 1 at 6. Moreover, there is no other venue of operation to which this Court could turn as the "place of actual direction, control, and coordination," even if a virtual or bare office was dispositive evidence of attempted manipulation. *See* ECF No. 18 at 3–4 (describing how all board decisions were made in Amarillo, Texas, and no meetings were held elsewhere); *cf. Hertz*, 559 U.S. at 81 (noting that Hertz operated facilities in 44 states, and the

actual nerve center was in New Jersey); *cf. Luminant Mining Co. LLC v. Parker*, 2019 WL 5419561, at *4 (E.D. Tex. September 26, 2019) (finding that a "virtual office" in Texas was not the actual center of operations, which was in Florida). The application of *Hertz* reveals that the "nerve center" test guides courts in selecting *which* jurisdiction is proper when there are alternatives. *See, e.g.*, *Cent. W. Va. Energy Co., Inc. v. Mountain State Carbon, LLC*, 636 F.3d 101, 107 (5th Cir. 2011) ("[N]early all of the high-level officers work, make significant corporate decision, and set corporate policy" in Dearborn, Michigan, not West Virginia, where "nearly all facets of the company's operations" took place.) Here, there is a singular location where the Court could possibly find Plaintiff's nerve center to be: Amarillo, Texas.

Moreover, fixation on the "virtual office" misplaces the analysis. True, "something called a 'virtual' office carries little weight in establishing jurisdiction, because jurisdiction requires an analysis of a party's real — not virtual — contacts with the forum state." *Heavy Duty Prods., LLC v. Bandwdth, LLC*, 2015 WL 3936180, at *4 (W.D. Tex. June 26, 2015). Characterizing business practices — including, as here, board meetings — as "virtual . . . suggests ambiguity in [a corporation's] true nerve center." *Immigration Sols., Inc. v. Stiffler*, No. 2:21-CV-1186-HL, 2022 WL 452083, at *3 (D. Or. February 15, 2022), *aff'd* No. 22-35163, 2023 WL 5567151 (9th Cir. August 29, 2023); *see also Bandwdth*, 2015 WL 3936180, at *4 ("[T]he contractors could just have easily have been in Buenos Aires and it would not have made a difference to the work that they were doing."). But when the hallmarks of "doing business" in a particular location are atypical, the key question remains the same — where does the directing, controlling, and coordinating take place? *See Aizen v. Am. Healthcare Admin. Servs., Inc.*, 2019 WL 4686811, at *6 (D.N.J. September 26, 2019) (parsing whether a "virtual company" with "employees and executives . . . spread out across the country" conducted corporate activity from the location in question); *West v. iHandy Ltd.*, 2020 WL 1303889, at *3 (C.D. Cal. March 19, 2020) (California

8

virtual office was not the nerve center because the sole director "spent the overwhelming majority of his time working out of Beijing, China, and currently lives and works in China."); *Dejong v. Prod. Assocs., Inc.*, 2015 WL 1285282, at *7–8 (C.D. Cal. March 19, 2015) (finding nerve center where high level officers and directors made significant decision on a daily basis rather than where two officers purportedly traveled monthly for meetings).

The nature of the office space, if any, and the methods of communication for decision-making are merely proxies for the real analysis — identifying the "place of actual direction, control, and coordination." *Hertz*, 599 U.S. at 94. Here, there is no other location that could possibly be the center of operations other than Amarillo, Texas, even if those communications were conference calls and emails rather than in-person meetings.[2]

Indeed, "the nerve center test was intended to make it easier for courts to determine a company's principal place of business" so "courts do not have to try to weigh corporate functions, assets, or revenues different in kind, one from the other." *Stiffler*, 2022 WL 452083, at *3 (quoting *Hertz*, 599 U.S. at 94) (internal marks omitted). Leaning on the importance of administrative simplicity in the *Hertz* test's application, it is clear that Amarillo, Texas, was the only place Plaintiff ever conducted business, and whether those activities took place in a conference room or on a conference call is immaterial. What matters is whether the directorial activities took place in this jurisdiction. *See Hertz*, 559 U.S. at 96 ("[I]f the bulk of a company's business activities visible

---

[2] The conclusion is sensible. Board meetings may be conducted in exotic locations without appropriating that location as the nerve center. *Hertz*, 559 U.S. at 97. But if the retreat takes place in the same jurisdiction as the regular directorial operations, there is no issue as the nerve center analysis is jurisdictional and there is only one jurisdiction implicated. What matters is that the governing activity (1) actually directs, controls and coordinates; and (2) takes place within the appropriate jurisdiction. *Id.* In other words, the board of directors need not meet at their headquarters, or even in person, if the necessary activities take place in the jurisdiction. Plaintiff's evidence sufficiently establishes that all pertinent activity has taken place exclusively in Amarillo, Texas. The Court acknowledges that courts from other jurisdiction have reached different results. *See, e.g., Bandwdth*, 2015 WL 3936180, at *4 (finding venue was improper because while "all lived in Austin . . . their interactions occurred almost exclusively by email" and "[t]hus, . . . could just have easily have been in Buenos Aires.") (citing no authority). Those decisions are not binding on this Court.

9

to the public take place in New Jersey, while its top officers direct those activities just across the river in New York, the 'principal place of business' is New York."). Based on Dr. Bartlett's affidavit (ECF No. 20-1), they did: "The only place that serves as the Freedom Coalition's headquarters, and the only place that decisions are or have been made from, is Amarillo, Texas." ECF No. 20-1 at 2–3.

Defendants also rely on *Homer v. AEP Texas, Inc.* to support their interpretation that *Hertz* categorically prohibits a virtual office consisting of a "mail drop box" or "a bare office with a computer." ECF No. 15 at 9 (citing *Homer v. AEP Texas, Inc.*, 2022 WL 11964708, at *2 (N.D. Tex. October 20, 2022)). But *Homer* supports Plaintiff's contention because it recognizes that the proper analysis "is not . . . the nature and breadth of its business activities" but rather "where the officers direct, control, and coordinate operations." *Homer*, 2022 WL 119647087, at *3 (internal marks omitted). Much like Defendants here, Homer insisted that AEP's Ohio headquarters were a "façade" and "constructed out of thin air." *Homer*, 2022 WL 11964708, at *2. But affidavit testimony detailing administrative affairs in Ohio refuted that contention. *Id.* at 6 ("The answer is clearly provided by [General Counsel] House's affidavit. Therein, he affirmatively states that decisions on issues including accounting, recordkeeping, capital improvements, regulatory compliance, procurement, and general management are made in Ohio . . . . [T]his plainly satisfies the *Hertz* test."). Here, Dr. Bartlett's affidavit — detailing administration taking place in Amarillo, Texas, and nowhere else — produces the same result. *See* ECF No. 20-1. Amarillo, Texas, is Plaintiff's principal place of business, even if its office space is bare or virtual, because it is the actual center of control.

   3. *Plaintiff's purpose has no relation to finding a principal place of business*

Defendants also urge the Court to consider whether a corporation's connection to a judicial district is "recent, ephemeral, or a construct for litigation" and query whether such a connection

"exists for no other purpose than to manipulate venue." ECF No. 15 at 12 (internal marks omitted). Defendants argue that because the Plaintiff corporation formed relatively recently and for the purpose of pursuing FOIA disclosures, it must exist to manufacture venue for litigation purposes. *Id.* In support, Defendants rely on *In re Microsoft Corp.*, 630 F.3d 1361, 1364–65 (Fed. Cir. 2011). But *In re Microsoft* is distinguishable.

First, the *Microsoft* plaintiff operated in the United Kingdom and created an office in Tyler, Texas, a mere sixteen days prior to litigation with Microsoft. *Id.* at 1365. The Texas-based office was created for one purpose: imminent litigation. In contrast, the Plaintiff corporation existed months before litigation, was created for the purpose of pursuing FOIA requests, and actively engaged in that pursuit before litigation arose from it. ECF Nos. 1 at 6–7, 21; 19 at 3–4. It can hardly be said that the Plaintiff corporation was "constructed for litigation" when the litigation resulted from adverse decisions related to Plaintiff's actual purpose.[3]

Second, as addressed, the Plaintiff corporation has no other office or meeting place — it exists solely in Amarillo, Texas. ECF No. 20. Thus, the central aim of *Hertz* — to find the actual "nerve center" in the absence of manipulation — would be rendered moot because there is no other location. *Hertz*, 559 U.S. at 97.

Third, Plaintiff conducts all of its business from Amarillo, Texas. *Cf. In re Microsoft*, 630 F.3d at 1364 (Allvoice's Texas office was merely "where its documents [were] maintained" and all clients were transferred to Allvoice's UK office). Therefore, *In re Microsoft*, insofar as Defendants attempt to apply it to demonstrate Plaintiff exists solely to manipulate venue, is inapplicable.

---

[3] By analogy, a corporation engaged in the business of insurance is not created for the purpose of litigation simply because there is a potential — or even a probability — that litigation will arise out of that business.

*4. Lack of paid staff at the Amarillo office is irrelevant*

Similarly, Defendants argue that a lack of paid staff at the Amarillo office location is evidence that Amarillo, Texas, is not its principal place of business. ECF No. 15 at 9 (citing *eRoad Ltd. v. PerDiemCo LLC*, No. 6:19-CV-026-ADA, 2019 WL 10303654, at *5 (W.D. Tex. September 19, 2019)). Defendants' reliance on *eRoad* is also misplaced for two reasons. First, the venue question in *eRoad* centered on a single-officer, single-board-member corporation alleged to be located in Marshall, Texas, and the member had never even visited Marshall, much less held any board meeting there. *eRoad*, 2019 WL 10303654, at *4–6. Second, the *eRoad* corporation's only product was an app developed in Alabama. *Id.* at 4. In contrast, the Plaintiff corporation has completed all of its work, through its board members, from Amarillo, Texas. ECF No. 20.

Additionally, Defendants' attempt to equate a lack of staff in *eRoad* and here misses the true manipulation in *eRoad*. There, the court noted lack of staff not because having paid staff was dispositive of the principal place of business, but because no staff at the location — combined with the corporation doing other directorial work elsewhere — suggested the forum was inappropriate and warranted closer scrutiny. *eRoad*, 2019 WL 10303654, at *20 ("Mr. Babayi directs, controls, and coordinates PDC's activities from his Washington, D.C. home/office and communicates with . . . licensing entities . . . from there."). In this case, Plaintiff does not do *any* work outside of its board meeting for which staff would be necessary. ECF No. 20. Simply because *Hertz* cautions that a minimal "office where the corporation holds its board meetings" prompts courts to look for attempts at jurisdictional manipulation, that trait alone is not dispositive in the absence of evidence of attempted venue manipulation.

Thus, Defendants' arguments against the propriety of venue based on Plaintiff's virtual office, timing, and lack of staff are unconvincing. Plaintiff has established that its sole place of

directing, controlling, and coordinating its efforts is Amarillo, Texas. Defendants' Motion to Dismiss based on improper venue is **DENIED**.

### B. *Transfer to the United States District Court for the District of Columbia is DENIED*

Defendants request transfer to the United States District Court for the District of Columbia as an alternative to dismissal based on improper venue. *See* ECF. No. 15 at 14–15. Because the Court finds venue is proper and denies dismissal, the Court declines transfer. Insofar as Defendants request for transfer can be construed as arising under the doctrine of *forum non conveniens*, that, too, is denied for three reasons.

First, Plaintiff has not failed to demonstrate proper venue in the Northern District of Texas. Second, even if Plaintiff did fail to demonstrate proper venue, Defendants failed to articulate how any of the four private or four public interest factors support transfer under the doctrine of *forum non conveniens*. *See id.*; *see also* Northern District of Texas Local Rule 7.1(d) (requiring an opposed motion be accompanied by a brief containing argument and authorities unless exempt); *eRoad*, 2019 WL 10303654, at *20 ("The movant must establish the desired venue is clearly more convenient."); *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("[W]hen the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected."). The only argument from Defendants' Motion to Dismiss that may implicate a public interest factor is the location of records — and the potential resources needed to acquire them — but Defendants fail to address why the District Court for the District of Columbia would provide access unavailable to this Court. *Cf. Citation Oil & Gas Corp. v. Dept. of Interior*, 2009 WL 10692957, at *2 (S.D. Tex. February 18, 2009) (contrasting the propriety of transfer based on "the physical location of evidence" and "the ease of electronic access to records"). Third, *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983) and the Local Rules of this Court do not excuse Defendants from engaging in traditional *forum non conveniens* analysis. To the

contrary, *In re Scott* and the Local Rules require it. *See In re Scott*, 709 F.2d at 270 ("[A] court must give due regard to the factors traditionally associated with the doctrine of *forum non conveniens* . . . ."); *see also* Local Rule 7.1(d) (requiring argument and authority on an opposed brief that is not exempted).

Therefore, Defendants' alternative request for transfer is **DENIED**.

### C. *Defendants' Rule 56 Motion is GRANTED IN PART and DENIED IN PART*

Defendants contend that the timing of Plaintiff's filings would have required Defendants to respond to Plaintiff's Motion for Summary Judgment before their deadline to respond to the complaint. *See* ECF No. 14 at 8. Specifically, Defendants assert they would be prejudiced from "having the opportunity to fully articulate a potentially case-dispositive defense: improper venue." *Id.* at 10. Thus, Defendants filed their Rule 56 Motion to answer the venue question before they would be required to respond to the Motion for Summary Judgment Motion.

Defendants' Rule 56 Motion requests four alternative forms of relief from the Court. *Accord* ECF No. 14 at 10–11, 17 *with* ECF No. 21 at 1. Regarding Plaintiff's Motion for Summary Judgment, Defendants move the Court to: (1) deny it as premature; (2) defer consideration until resolution of the Motion to Dismiss; (3) defer consideration to permit, and grant, discovery into venue; or (4) grant Defendants a twenty-one (21) day extension to respond. *See* ECF No. 21 at 1.

Because the Court determines that venue is proper, the Court **DENIES** the Rule 56 Motion to the extent it requests denial of Plaintiff's Summary Judgment Motion, deferral to conduct limited discovery, and discovery into venue. However, the Court **GRANTS** the motion as to deferral until resolution of the Motion to Dismiss (herein denied) and Defendants' alternative request for an extension of time to respond to Plaintiff's Motion for Summary Judgment.

1. *The Court does not deny the Summary Judgment Motion as premature*

Defendants contend Plaintiff's Summary Judgment Motion was prematurely filed. *See* ECF No. 21 at 2. But Defendants also acknowledge that "the Federal Rules of Civil Procedure do allow a party to file a motion for summary judgment before an answer has been filed." ECF No. 14 at 11. Accordingly, the Court exercises its discretion not to deny Plaintiff's Motion for Summary Judgment on those grounds. Defendants' Rule 56 Motion's request that the Court deny Plaintiff's Motion for Summary Judgment as premature is **DENIED**.

2. *The Court defers consideration to resolve Defendants' Motion to Dismiss*

Defendants filed the Rule 56 Motion to avoid expending potentially unnecessary resources adjudicating Plaintiff's Motion for Summary Judgment if venue were found to be improper. *See* ECF No. 14 at 18. The Rule 56 Motion, to that end, is **GRANTED**. The Court does resolve Defendants' Motion to Dismiss before ruling on Plaintiff's Motion for Summary Judgment.

3. *The Court does not defer to permit discovery, and denies jurisdictional discovery*

Defendants' Rule 56 Motion — as it seeks deferral to conduct discovery — is premised wholly on resolving the venue "threshold question," relying on the same argument as their Motion to Dismiss for improper venue. ECF No. 14 at 10–11. Defendants point to a single fact, which they contest in both their Rule 56 Motion and their Motion to Dismiss: "whether Plaintiff's principal place of business really is in the Northern District of Texas." *Id.* at 16. "Defendants acknowledge that discovery is rare and generally disfavored in the FOIA context," *id.* at 14–15 (citing cases), and "whether to allow discovery in FOIA cases rests within the discretion of the district judge and is to be sparingly granted," *id.* at 15 (internal marks omitted). Defendants also correctly note that the discovery they request is not truly "in the FOIA context" but rather the narrow issue of jurisdiction vis-à-vis venue. *Id.* If the facts showed that Plaintiff's principal place of business is

*not* in the Northern District of Texas, then venue would be lacking and the pending summary judgment motion would be denied for lack of jurisdiction or the case transferred.

However, the Court has already determined that venue is proper. The "threshold question" is settled. Discovery, however expansive, will not "create a genuine issue of material fact." *January*, 74 F.4th at 651. The Rule 56 Motion's requests for deferral to conduct discovery and for discovery are **DENIED**.

   *4. The Court grants Defendants' requested extension of time to respond*

In the alternative, Defendants seek an extension of time to respond to Plaintiff's Motion for Summary Judgment. *See* ECF No. 14 at 17–19. The Court finds that good cause for extension exists, as required by Rule 6(b), because Defendants intended and expected to avoid "expending unnecessary resources" by first litigating the "threshold" venue question. *Id.* at 18. Defendants request twenty-one (21) to thoroughly respond to the summary judgment motion, prepare any necessary affidavits related to withholding requested documents, and "see if they can reach a resolution on any of the claims." *Id.*

Defendants' request for extension of time to respond is **GRANTED**. Defendants are **ORDERED** to file their response to Plaintiff's Motion for Summary Judgment **within twenty-one (21) days of this Order**. Briefing will thereafter proceed according to the Local Rules, with Plaintiff's reply brief due fourteen (14) days after Defendants' response is filed. *See* Northern District of Texas Local Civil Rule 7.1(e)–(f).

   **CONCLUSION**

Defendants' Motion to Dismiss for improper venue is **DENIED** because the Court finds that Plaintiff has carried its burden to establish that its principal place of business, indeed its only place of business, is in Amarillo, Texas. Defendants' Rule 56 Motion is **DENIED**, insofar as it moves the Court to deny or defer consideration of Plaintiff's Summary Judgment Motion as

16

premature or to conduct discovery, because the Court has determined venue is proper. For the same reason, discovery into venue is also **DENIED**. Finally, Defendants' request for twenty-one (21) days extension to respond to Plaintiff's Motion for Summary Judgment is **GRANTED**. Defendants are **ORDERED** to file their response to Plaintiff's Motion for Summary Judgment **within twenty-one (21) days of this Order**, with any reply thereto due fourteen (14) days after Defendants' response is filed.

**SO ORDERED**.

November 3, 2023

MATTHEW J. KACSMARYK
UNITED STATES DISTRICT JUDGE