IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

_____

FREEDOM COALITION OF DOCTORS
FOR CHOICE,

     Plaintiff,

v.

CENTERS FOR DISEASE CONTROL
AND PREVENTION, and U.S.
DEPARTMENT OF HEALTH AND
HUMAN SERVICES,

     Defendants.

Civil Action No. 2:23-CV-00102-Z

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
CROSS-MOTION FOR SUMMARY JUDGMENT**

LEIGHA SIMONTON
UNITED STATES ATTORNEY

Sarah E. Delaney
Assistant United States Attorney
Arizona Bar No. 031722
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8730
Facsimile:   214-659-8807
sarah.delaney@usdoj.gov

Attorneys for Defendants

# Table of Contents

A.  There is no dispute that CDC performed an adequate search. ......................2

B.  There is no dispute that information within the Free-Text Responses was exempt from disclosure under FOIA Exemption 6. .............................3

C.  The non-exempt information in the Free-Text Responses cannot be reasonably segregated. ...................................................................................4

    1.  The public interest in disclosure of the Free-Text Responses does not substantially outweigh the V-safe participants' substantial privacy interests. ...............................................................4

    2.  Defendants have demonstrated why the personally identifiable information in the millions of Free-Text Responses cannot be reasonably segregated, and any request to do so is unreasonably burdensome under the FOIA requirements. ..................................................................................8

D.  Doctors for Choice has failed to demonstrate it is entitled to relief on either of its remaining claims. .....................................................................12

    1.  Doctors for Choice's claim regarding any alleged delays in responding to its administrative appeals is moot and no further relief is available. ................................................................12

    2.  Doctors for Choice has failed to demonstrate the necessary elements to receive a fee waiver. ......................................................14

E.  Conclusion..............................................................................................17

# Table of Authorities

## Cases

*Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Comm.*,
   907 F.2d 203 (D.C. Cir. 1990) ................................................................................ 15

*Batton v. Evers*,
   598 F.3d 169 (5th Cir. 2010) ............................................................................... 2, 10

*Brewer v. U.S. Dep't of Justice*,
   No. 3:18-CV-1018-B-BH, 2019 WL 3948351 (N.D. Tex. July 30, 2019) ..................... 3

*Carney v. U.S. Dep't of Justice*,
   19 F.3d 807 (2d Cir. 1994) ................................................................................. 3, 16

*Cause of Action v. FTC*,
   799 F.3d 1108 (D.C. Cir. 2015) .......................................................................... 16, 17

*Citizens for Responsibility & Ethics in Washington v. FEC*,
   711 F.3d 180 (D.C. Cir. 2013) ............................................................................... 14

*Cooper Cameron Corp. v. U.S. Dep't of Labor*,
   280 F.3d 539 (5th Cir. 2002) ................................................................................. 1, 3

*Ctr. for Immigr. Studies v. U.S. Citizenship & Immigr. Servs.*,
   628 F. Supp. 3d 266 (D.D.C. 2022) ............................................................................ 9

*Forest Guardians v. FEMA*,
   410 F.3d 1214 (10th Cir. 2005) ................................................................................. 6

*Ground Saucer Watch, Inc. v. CIA*,
   692 F.2d 770 (D.C. Cir. 1981) ................................................................................ 10

*Halloran v. Veterans Admin.*,
   874 F.2d 315 (5th Cir. 1989) ..................................................................................... 5

*Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*,
   608 F.2d 1381 (D.C. Cir. 1979) ............................................................................... 10

*Hildenbrand v. U.S. Dep't of Justice*,
   No. 3:11-CV-1829-N, 2012 WL 13103204 (N.D. Tex. Aug. 21, 2012) ........................ 3

*Hodge v. FBI*,
   703 F.3d 575 (D.C. Cir. 2013) ................................................................................ 12

*Inst. for Justice v. IRS*,
   941 F.3d 567 (D.C. Cir. 2019) ................................................................ 9

*Jud. Watch v. U.S. Dep't of Def.*,
   715 F.3d 937 (D.C. Cir. 2013) ............................................................. 10

*Landmark Legal Found. v. EPA*,
   272 F. Supp. 2d 59 (D.D.C. 2003) ....................................................... 14

*Larson v. CIA*,
   843 F.2d 1481 (D.C. Cir. 1988) ........................................................... 16

*Long v. Off. of Pers. Mgmt.*,
   692 F.3d 185 (2d Cir. 2012) .................................................................. 9

*Miller v. U.S. Dep't of State*,
   779 F.2d 1378 (8th Cir. 1985) ............................................................... 3

*Nat'l Archives & Records Admin. v. Favish*,
   541 U.S. 157 (2004) ................................................................................ 5

*Nat'l Sec. Counselors v. U.S. Dep't of Justice*,
   848 F.3d 467 (D.C. Cir. 2017) ....................................................... 16, 17

*Oglesby v. U.S. Dep't of Army*,
   920 F.2d 57 (D.C. Cir. 1990) ................................................................ 3

*Payne v. Dep't of Just.*,
   121 F.3d 704, 1997 WL 450139 (5th Cir. 1997) ............................... 10

*Pub. Health and Med. Prof'ls for Transparency v. FDA*,
   No. 4:22-CV-915-P, 2023 WL 3335071 (N.D. Tex. May 9, 2023) ............................. 15

*Salas v. Off. of Inspector Gen.*,
   577 F. Supp. 2d 105 (D.D.C. 2008) ...................................................... 5

*Schrecker v. U.S. Dep't of Just.*,
   349 F.3d 657 (D.C. Cir. 2003) ............................................................. 11

*Sherman v. U.S. Dep't of Army*,
   244 F.3d 357 (5th Cir. 2001) ............................................................ 7, 8

*Solar Sources, Inc. v. United States*,
   142 F.3d 1033 (7th Cir. 1998) .............................................................. 9

*Tijerina v. Walters,*
821 F.2d 789 (D.C. Cir. 1987)...................................................................13

*U.S. Dep't of Def. v. Fed. Labor Relations Auth.,*
510 U.S. 487 (1994)...................................................................................8

*U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press,*
489 U.S. 749 (1989)............................................................................5, 6, 7

*U.S. Dep't of State v. Ray,*
502 U.S. 164 (1991).................................................................................5, 6

*U.S. Dep't of State v. Wash. Post Co.,*
456 U.S. 595 (1982)...................................................................................6

*Velasquez v. Nielsen,*
754 F. App'x 256 (5th Cir. 2018).............................................................13

*Voinche v. FBI,*
999 F.2d 962 (5th Cir. 1993)....................................................................13

*Voinche v. U.S. Dep't of Air Force,*
983 F.2d 667 (5th Cir. 1993)..............................................................15, 17

*Weisberg v. U.S. Dep't of Justice,*
705 F.2d 1344 (D.C. Cir. 1983)................................................................2

**Statutes**

5 U.S.C. § 552(a)(4)(A)(iii).........................................................................17

5 U.S.C. § 552(a)(4)(A)(vii)....................................................................15, 16

5 U.S.C. § 552(a)(6)(C)...............................................................................14

5 U.S.C. § 552(b)(6).....................................................................................4

**Other Authorities**

MedDRA, "Welcome to the ICH MedDRA website," https://www.meddra.org/how-to-use/support-documentation/english/welcome (last visited Dec. 22, 2023).....................7

In its opposition to the cross-motion for summary judgment filed by Defendants CDC and HHS[1], Plaintiff Doctors for Choice concedes several issues.  (*See generally* Doc. 35.)  First, Doctors for Choice confirms that it is not challenging the adequacy of CDC's search.  Doctors for Choice also does not dispute that the Free-Text Responses it is requesting contain personally identifiable information that should not be disclosed and is exempt from disclosure under FOIA Exemption 6.  On this basis alone, Defendants can be granted summary judgment.  *See Cooper Cameron Corp. v. U.S. Dep't of Labor*, 280 F.3d 539, 543 (5th Cir. 2002) (explaining that courts will generally grant an agency's motion for summary judgment "if the agency identifies the documents at issue and explains why they fall under [FOIA] exemptions").

Furthermore, based on Doctors for Choice's own contentions, the sole remaining question as to Doctors for Choice's principal claim in this litigation is whether the non-exempt portions of the Free-Text Responses are reasonably segregable.

Defendants have already demonstrated, in detail, why they are not: it would take tens of thousands of workhours to manually review and redact millions of free-text responses, which is unreasonably burdensome and therefore beyond Defendants' FOIA obligations.  Doctors for Choice's conclusory arguments to the contrary—which focus more on its perceived concerns with the post-injection timeline covered by studies involving the V-safe data and its blatant misunderstanding of how government

---

[1] Acronyms and capitalized terms shall have the same meaning as in the Consolidated Brief in Support of Defendants' Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Summary Judgment.  (Doc. 29.)

contracting works—fail to rebut Defendants' explanations.

As to its secondary claims, Doctors for Choice provides false information about Defendants' response to its administrative appeals, fails to demonstrate any kind of harm whatsoever with any delays in the administrative appeal responses, and ignores Defendants' explanation that this claim is moot. And as for Doctors for Choice's claim that its fee waiver should not have been denied, it just makes vague arguments that the information will probably, eventually become available to a generic, undefined public on its operational-but-apparently-not-yet-visited website. That is far from sufficient to demonstrate Doctors for Choice was entitled to any fee waiver.

Doctors for Choice has conceded the necessary elements to grant summary judgment in Defendants' favor and has failed to overcome Defendants' arguments demonstrating why its remaining claims fail. As a result, Defendants should be granted judgment as a matter of law. Therefore, the Court should grant summary judgment in Defendants' favor, deny Doctors for Choice's motion for summary judgment, and enter final judgment in Defendants' favor dismissing Doctors of Choice's claims against Defendants with prejudice.

## A.    There is no dispute that CDC performed an adequate search.

To prevail on summary judgment in the FOIA context, the agency must demonstrate "beyond material doubt that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. U.S. Dep't of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983); *see also Batton v. Evers*, 598 F.3d 169, 176 (5th Cir. 2010) (explaining an agency can demonstrate it conducted an adequate search "by showing that

it used 'methods which can be reasonably expected to produce the information

requested'") (quoting *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990)).

Defendants explained in detail in their summary-judgment motion why CDC's

search for the requested records was adequate.  (*See* Doc. 29, at 10–14.)  And Doctors for

Choice is not disputing this issue.  It states that "[n]owhere in Plaintiff's Motion, nor in

its Complaint, does it challenge the adequacy of CDC's search."  (Doc. 35, at 2.)

Therefore, the Court should grant summary judgment for Defendants on the question of

the adequacy of the search.

**B.      There is no dispute that information within the Free-Text Responses
         was exempt from disclosure under FOIA Exemption 6.**

In addition to demonstrating the adequacy of its search, an agency must

demonstrate "that any withheld material is exempt from disclosure" in order to prevail on

a motion for summary judgment in the FOIA context.  *Brewer v. U.S. Dep't of Justice*,

No. 3:18-CV-1018-B-BH, 2019 WL 3948351, at *2 (N.D. Tex. July 30, 2019) (report

and recommendation), *adopted*, 2019 WL 3947132 (N.D. Tex. Aug. 21, 2019) (citing

*Cooper Cameron*, 280 F.3d at 543; *Carney v. U.S. Dep't of Justice*, 19 F.3d 807, 812 (2d

Cir. 1994)).  "In order to discharge this burden, the agency 'must prove that each

document that falls within the class requested either has been produced, is unidentifiable,

or is wholly exempt from the [FOIA's] inspection requirements.'"  *Hildenbrand v. U.S.*

*Dep't of Justice*, No. 3:11-CV-1829-N, 2012 WL 13103204, at *5 (N.D. Tex. Aug. 21,

2012) (quoting *Miller v. U.S. Dep't of State*, 779 F.2d 1378, 1382–83 (8th Cir. 1985)).

On this issue, Doctors for Choice indicates that it is not seeking any personally

identifiable information, and that such information "should be redacted from the data produced." (Doc. 35, at 3.) By indicating that it is not entitled to the PII, Doctors for Choice appears to agree that PII in the Free-Text Responses is exempt from disclosure under FOIA Exemption 6.[2] Thus, Defendants' summary-judgment motion can also be granted as to the issue of whether the information withheld from disclosure fell within a FOIA exemption. (*See* Doc. 29, at 14–22.)

C.     **The non-exempt information in the Free-Text Responses cannot be reasonably segregated.**

The parties agree that the sole remaining question as to Doctors for Choice's claim that Defendants improperly withheld the Free-Text Responses is whether the non-exempt information in the Free-Text Responses can be reasonably segregated. But Defendants have already demonstrated that Doctors for Choice's claims about their ability to produce the Free-Text Responses are invalid. (*See* Doc. 29, at 14–32.) And Doctors for Choice's assertions as to why the personally identifiable information in those responses can be segregated are incorrect, as its arguments inaccurately compare different programs, different contracts, and different agencies to claim that what has previously worked in a wholly separate context must be able to work here. (*See* Doc. 35, at 3–18.)

1.     **The public interest in disclosure of the Free-Text Responses does not substantially outweigh the V-safe participants' substantial privacy interests.**

Doctors for Choice argues that there is a strong public interest in the Free-Text

---

[2] Exemption 6 permits an agency to withhold from disclosure "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

**Defendants' Reply in Support of Their Cross-Motion for Summary Judgment – Page 4**

Responses. (Doc. 35, at 4–12.) But that issue is irrelevant here. Whether there is a strong public interest in the information sought through a FOIA request is part of the balancing test courts use to determine whether the requested information is covered by a FOIA exemption. *See Halloran v. Veterans Admin.*, 874 F.2d 315, 318–19 (5th Cir. 1989) (citing *U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press*, 489 U.S. 749, 762–75 (1989)). But here, the parties *already* agree that the Free-Text Responses are covered by FOIA Exemption 6. (*See* Doc. 29, at 14–22; Doc. 35, at 2–3.) Thus, there is no need to perform the balancing test.

And even if the Court were to apply the balancing test, Doctors for Choice has failed to "articulate a public interest sufficient to outweigh an individual's privacy interest" and to demonstrate the public interest is significant. *Salas v. Off. of Inspector Gen.*, 577 F. Supp. 2d 105, 112 (D.D.C. 2008) (citing *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). Doctors for Choice claims there is a significant public interest in the Free-Text Responses because the data was collected through "a program that American taxpayers funded" and because most of the studies published to date on the V-safe data looked at the post-injection side effects from only the first seven days after an individual received the COVID-19 vaccine. (Doc. 35, at 5–10.)

But as to its first point, the vast majority (if not all) federal government programs are funded by the American taxpayers, and yet courts have routinely agreed that FOIA Exemption 6 applies to information sought from federal government programs through FOIA requests. *See, e.g.*, *U.S. Dep't of State v. Ray*, 502 U.S. 164, 171-79 (1991) (applying exemption to request seeking State Department interview reports containing

extensive personal details, which were conducted pursuant to assurances of confidentiality, with Haitian individuals who emigrated illegally to the United States and were involuntarily returned to Haiti); *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 596, 602–03 (1982) (applying exemption to request seeking information about State Department passport records to indicate whether third parties were U.S. citizens); *Forest Guardians v. FEMA*, 410 F.3d 1214, 1216 (10th Cir. 2005) (applying exemption to request seeking mapping files that identified the location of structures insured under FEMA's National Flood Insurance Program).

   And as to the second point, the time period that some scientists have chosen to use in their research studies, and Doctors for Choice's related assertion that releasing the entirety of the Free-Text Responses would somehow mean these scientists would now change the length of the time period they analyze in future studies, has no correlation to whether the Free-Text Responses are exempt from disclosure under FOIA Exemption 6. *See Reporters Comm.*, 489 U.S. at 771 ("[W]hether an invasion of privacy is *warranted* cannot turn on the purposes for which the request for information is made."). "Mere speculation about hypothetical public benefits [of disclosure] cannot outweigh a demonstrably significant invasion of privacy." *Ray*, 502 U.S. at 179.

   Moreover, CDC has already released much of the Free-Text Response information sought by Doctors for Choice in a format that can be used by scientists and researchers worldwide: in MedDRA codes. (*See* Doc. 30 (appendix in support of Defendants' cross-motion), at App. 9 ¶ 21, and 13 ¶¶ 30–34.) The Medical Dictionary for Regulatory Activities (MedDRA) provides a clinically validated and international medical

terminology dictionary that is routinely used by regulatory authorities to apply specific and standardized terminology to the description of symptoms, signs, disease, syndromes, and diagnoses. *See* MedDRA, "Welcome to the ICH MedDRA website," https://www.meddra.org/how-to-use/support-documentation/english/welcome (last visited Dec. 22, 2023).

CDC has already produced more than 5 million Free-Text Response fields converted into these MedDRA codes, providing standardized descriptions of symptoms and health events.  (Doc. 30, at App. 13 ¶¶ 32–33.)  With the MedDRA coding, the wide variety of language used by non-medical individuals typing information into V-safe is converted into a clear and consistent term that can be universally used in research.  (Doc. 30, at App. 13 ¶ 31.)  For example, individual reports of "a temperature of 102," "my temperature was high," and "his forehead was burning up" would all be converted to the MedDRA code "fever."  (*Id.* at n.7.)  This means researchers can more easily compare symptoms and side effects across individuals who submitted information to V-Safe, and between different researchers' studies of the V-safe data.  (Doc. 30, at App. 13 ¶¶ 31–32.)  Doctors for Choice's claim that the full, unconverted Free-Text Responses are needed to allow for any real analysis of the V-safe data is false.

As the Fifth Circuit has said, the "public interest" relevant to Exemption 6 balancing "is not implicated by disclosure of information about private citizens that has accumulated in various government files but reveals little or nothing about an agency's own conduct."  *Sherman v. U.S. Dep't of Army*, 244 F.3d 357, 361 (5th Cir. 2001) (citing *Reporters Comm.*, 489 U.S. at 754–57).  Thus, the key question is "whether the requested

information sheds light on agency action." *Id.* at 362.  As Defendants have explained, disclosing the Free-Text Responses—which are individuals' self-reported statements regarding their own or a family member's reaction to the COVID-19 vaccine—would not "contribut[e] significantly to public understanding *of the operations or activities of the government.*"  *U.S. Dep't of Def. v. Fed. Labor Relations Auth.*, 510 U.S. 487, 495 (1994).  Thus, Doctors for Choice's assertion that the full, non-MedDRA-converted Free-Text Responses need to be released in the public interest fails to overcome the substantial privacy interests of the individuals who submitted this personal information to V-safe.

   **2.    Defendants have demonstrated why the personally identifiable information in the millions of Free-Text Responses cannot be reasonably segregated, and any request to do so is unreasonably burdensome under the FOIA requirements.**

   Doctors for Choice argues that Defendants can reasonably segregate the non-exempt portions of the Free-Text Responses, despite Defendants' detailed explanations to the contrary.  (Doc. 35, at 12–18.)

   One of its primary arguments is that, by indicating the CDC FOIA Officer performed a "cursory" random sample search of 500,000 Free-Text Responses to understand what kind of personally identifiable information could be in those responses, that means CDC can easily perform a thorough, twice-reviewed analysis and redaction of 7.8 million Free-Text Responses.  (Doc. 35, at 12–13; *see also* Doc. 30, at App. 6 ¶ 15, at 8 ¶ 19, and at 10 ¶¶ 23–24.)  But these two tasks (a quick scan of some of the data versus a comprehensive review of each and every response, times two) are not equivalents.  The CDC FOIA Office performed the random sample to validate its understanding that the

Free-Text Responses contained such personally identifiable information that the PII could not be reasonably segregated out from the remaining portions of the responses.  (Doc. 30, at App. 8–9 ¶¶ 19–21.)

And this review confirmed that the non-exempt information within the Free-Text Responses is not *reasonably* segregable, because having to review and redact 7.8 million Free-Text Responses to segregate non-exempt information would impose an unreasonable burden on the agency.  (Doc. 30, at App. 10–12 ¶¶ 22–29.)  FOIA "protects agencies from undue burdens" like this.  *Ctr. for Immigr. Studies v. U.S. Citizenship & Immigr. Servs.*, 628 F. Supp. 3d 266, 271 (D.D.C. 2022) (quoting *Inst. for Justice v. IRS*, 941 F.3d 567, 570 (D.C. Cir. 2019)).  Indeed, "FOIA does not require an agency to mobilize its full resources for compliance with FOIA requests."  *Long v. Off. of Pers. Mgmt.,* 692 F.3d 185, 192 (2d Cir. 2012); *see also Solar Sources, Inc. v. United States*, 142 F.3d 1033, 1039 (7th Cir. 1998) (explaining that the FOIA statute "makes clear that courts should not order segregation when such a process would be significantly unwieldy").

Doctors for Choice also disputes how long it would take CDC to segregate the non-exempt portions of the Free-Text Responses; points to the MedDRA-coding contract to argue that the Free-Text Responses can similarly be reviewed, redacted, and produced in "no more than 9.3 months"; and disagrees that the agency cannot simply repurpose its existing contracts or some portion of the "discretionary budget" to pay for Doctors for Choice's request.  (Doc. 35, at 14–18.).

But Doctors for Choice's general disagreements with Defendants' explanations in

the declaration submitted with their motion for summary judgment are not sufficient to dispute the validity of those explanations. "[I]n analyzing the affidavits and declarations submitted by the government," the agency's affidavit or declaration "is entitled to a 'presumption of legitimacy' unless there is evidence of bad faith in handling the FOIA request," *Batton*, 598 F.3d at 176, "which cannot be rebutted by 'purely speculative claims,'" *Payne v. Dep't of Just.*, 121 F.3d 704, 1997 WL 450139, at *2 (5th Cir. 1997) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)). Instead, a reviewing court should accord an agency's declaration "substantial weight." *Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv.*, 608 F.2d 1381, 1387 (D.C. Cir. 1979); *see also Jud. Watch v. U.S. Dep't of Def.*, 715 F.3d 937, 941 (D.C. Cir. 2013) ("Ultimately, an agency's justification for invoking a FOIA exemption is sufficient if it appears 'logical' or 'plausible.'") (citation omitted).

Here, Doctors for Choice can point to no evidence of bad faith—as is required to rebut Defendants' declaration logically explaining the undue burden a line-by-line manual review for PII would impose. Defendants have logically explained in their declaration that it would take a FOIA analyst about 123,564 workhours to complete just the first level of processing for all 7.8 million Free-Text Responses, not to mention the second level of review by a senior FOIA analyst or Team Lead, which will likewise take tens of thousands of workhours to complete. (Doc. 30, at App. 11 ¶ 26.) And despite what Doctors for Choice seems to think, reviewing and redacting PII from these millions of Free-Text Responses would not be a simple task. Innocuous details recorded in a Free-Text Response could be identifying in context—such as the date a vaccine was

administered, which when combined with the year of the individual's birth, could reveal the individual's age or birthdate. (*See* Doc. 30, at App. 16 ¶ 38; *see also* Doc. 30, at App. 8 ¶ 19 (describing some of the PII found in the cursory random sample).) Similarly, a seemingly generic location, road, highway, or business (such as where the vaccine was received) may disclose the registrant's zip code. (*Id.*) And some V-safe participants included detailed medical information in their responses, such as their medical history, medications they had been prescribed, and medication dosages taken, which could be used to identify the individual. (*Id.*) Given the complexities of this information, and the obvious concerns about inadvertent disclosure of PII that may not appear to be PII on its face, both the FOIA analyst and the reviewer would need to complete a manual, line-by-line review of each Free-Text Response—both the redacted and unredacted versions—to ensure accuracy and redaction of all PII, not to mention any potential research to determine whether the information at issue is considered PII or not in the context. (Doc. 30, at App. 10 ¶¶ 23–24.) "To require the Government to shoulder such a potentially onerous task . . . goes well beyond the 'reasonable effort' demanded in this context." *Schrecker v. U.S. Dep't of Just.*, 349 F.3d 657, 664 (D.C. Cir. 2003).

Additionally, Doctors for Choice's claims that Defendants can just repurpose existing contracts or divert "discretionary" money from other areas where it has been allocated to respond to its FOIA request ignore the realities of government budget constraints or government contracting. If the CDC FOIA Office were to request funding to pay to have the Free-Text Responses processed as Doctors for Choice wants, the request would first need to go through a planning process at the agency. (Doc. 30, at

App. 14 ¶ 35.)  There is no guarantee that the request would be approved or that there would be funds available.  (*Id.*)  Generally, this submission process takes about a year before an answer is provided concerning funding.  (*Id.*)  CDC would then need to initiate a solicitation for bids to contract for a vendor to process the Free-Text Responses, and then train the contract staff, which realistically would take another year.  (*Id.*)  This is not something CDC can just start doing immediately under the reality of the fiscal constraints (both budgetary and statutory) that it operates within.

The agency is "entitled to a presumption that it complied with the obligation to disclose reasonably segregable material," and the requestor can only rebut that presumption with "sufficient evidence" to the contrary.  *Hodge v. FBI*, 703 F.3d 575, 582 (D.C. Cir. 2013).  Doctors for Choice has failed to provide any such "sufficient evidence" to demonstrate that Defendants have not disclosed all reasonably segregable material to date.  Thus, Defendants are entitled to summary judgment on this claim.

### D.   Doctors for Choice has failed to demonstrate it is entitled to relief on either of its remaining claims.

### 1.   Doctors for Choice's claim regarding any alleged delays in responding to its administrative appeals is moot and no further relief is available.

In its own motion for summary judgment, Doctors for Choice argued that Defendants never responded to either of its administrative appeals.  (*See* Doc. 9 (Plaintiff's brief), at 26–27.)  Apparently now realizing this allegation was false at the time it was made, Doctors for Choice admits in its opposition that Defendants did in fact respond, but now complains they did not respond timely.  (Doc. 35, at 19.)

Yet this allegation is partially false as well.  As Defendants explained, they did

respond to the appeal of Doctors for Choice's fee-waiver denial just eight business days after it was filed.  (Doc. 30, at App. 3 ¶ 9 (explaining that Plaintiff filed this appeal on March 31, 2023, and the HHS Office of the Secretary's Freedom of Information Act Office issued a decision on April 12, 2023), and at 150.)  This letter was also re-sent on July 3, 2023—more than a week before Plaintiff filed its summary-judgment motion—to ensure Doctors for Choice received the decision on the fee-waiver appeal.  (Doc. 30, at App. 3 ¶ 9, and at 154.)  But Doctors for Choice falsely claims that Defendants responded for the first time on July 5, 2023 (Doc. 35, at 19), a wholly inaccurate date.

Regardless of these false assertions, Doctors for Choice also ignores Defendants' further arguments as to why this claim fails.  Doctors for Choice fails to address Defendants' assertions that this claim is moot as Defendants have responded to both appeals.  As the Fifth Circuit has explained, a FOIA requestor's untimeliness claim is mooted by the agency's belated response to the request.  *Velasquez v. Nielsen*, 754 F. App'x 256, 262 (5th Cir. 2018); *see also Voinche v. FBI*, 999 F.2d 962, 963 (5th Cir. 1993) (affirming district court's grant of summary judgment to the FBI because "[i]nsofar as [the plaintiff] challenged the tardiness of the FBI's response, his claim was rendered moot by the FBI's response to his request").  "[H]owever fitful or delayed the release of information under the FOIA may be . . . if we are convinced [the agency has], however belatedly, released all nonexempt material, we have no further judicial function to perform under the FOIA."  *Tijerina v. Walters*, 821 F.2d 789, 799 (D.C. Cir. 1987).

And Doctors for Choice fails to dispute that no further relief is available for this claim under the FOIA.  An agency's failure to comply with the statutory time limits of a

FOIA request or appeal means that the requestor is deemed to have exhausted its administrative remedies and can file suit in district court.  *See* 5 U.S.C. § 552(a)(6)(C); *see also Citizens for Responsibility & Ethics in Washington v. FEC*, 711 F.3d 180, 189–90 (D.C. Cir. 2013) (explaining that if an agency does not comply with the FOIA time limits, the "penalty" is that it cannot assert failure to exhaust administrative remedies to keep the case out of court).  Thus, Defendants could not argue for dismissal of Doctors for Choice's lawsuit by claiming Doctors for Choice failed to exhaust its administrative remedies.  And they did not.  (*See generally* Doc. 29.)  However, failure to comply with these time limits does not automatically entitle the FOIA requestor to judgment in its favor.  *See Landmark Legal Found. v. EPA*, 272 F. Supp. 2d 59, 68 (D.D.C. 2003) ("[A] lack of timeliness or compliance with FOIA deadlines does not preclude summary judgment for an agency, nor mandate summary judgment for the requester.")

As Doctors for Choice did not dispute that its claim for allegedly untimely responses to its administrative appeals is moot or that it is not entitled to any further relief on this claim, Defendants are entitled to summary judgment on this issue, and this claim should be denied in its entirety.

**2.      Doctors for Choice has failed to demonstrate the necessary elements to receive a fee waiver.**

Doctors for Choice also argues that its public-interest fee waiver request should have been granted, based on conclusory assertions that the information will "certainly contribute" to public knowledge about the COVID-19 vaccine because it will post this information on the Doctors for Choice website that is "open" and "operational" but

apparently has no current visitors.  (Doc. 35, at 19–21.)  It also claims that in another case in this district, the plaintiff was not required to show its website traffic or provide information on how it would publicly share the requested FOIA information before the court ordered the documents produced.  (Doc. 35, at 21 (citing *Pub. Health and Med. Prof'ls for Transparency v. FDA*, No. 4:22-CV-915-P, 2023 WL 3335071 (N.D. Tex. May 9, 2023)).)

But that case did not involve any dispute about a fee waiver.  *See Pub. Health*, 2023 WL 3335071, at *2 (explaining there were two issues in the case: the denial of the plaintiff's request for expedited processing, and a production schedule for the requested documents); *see also Pub. Health*, (N.D. Tex. Oct. 11, 2022), Doc. 1 (Compl.).[3] Moreover, as the Fifth Circuit has explained, the fee waiver requestor bears the burden of proving an entitlement to a fee waiver.  *Voinche v. U.S. Dep't of Air Force*, 983 F.2d 667, 668 n.2 (5th Cir. 1993).  And if the requestor files suit on a fee-waiver denial, while the court reviews a challenge to the denial of a fee waiver de novo, it is limited to the record before the agency.  *Am. Fed'n of Gov't Emps., Local 2782 v. U.S. Dep't of Comm.*, 907 F.2d 203, 209 (D.C. Cir. 1990) (citing 5 U.S.C. § 552(a)(4)(A)(vii)).

The fact that the subject matter at issue in the FOIA request is of public interest is

---

[3] Additionally, while Doctors for Choice claims otherwise, the plaintiff's complaint in *Public Health* described the heavy website traffic the organization already had before filing its suit, which arguably demonstrated how producing the requested records for disclosure on the organization's website would reach "a reasonably broad audience of persons interested in the subject."  *See Pub. Health*, Compl., at ¶ 29 ("To date . . . there have been approximately three-quarters of a million downloads of the documents and data released and PHMPT's website itself has drawn over 2.7 million visitors and 4.5 million views in the last 12 months.").

not of itself sufficient to demonstrate entitlement to the public-interest fee waiver.

*Larson v. CIA*, 843 F.2d 1481, 1483 (D.C. Cir. 1988).  Instead, an "agency may infer a

lack of substantial public interest when a public interest is asserted but not identified with

reasonable specificity, and circumstances do not clarify the point of the requests." *Id.*

(cleaned up).  Applying the public-interest fee-waiver criteria requires "assessment along

two dimensions: the degree to which 'understanding' of government activities will be

advanced by seeing the information; and the extent of the 'public' that the information is

likely to reach." *Cause of Action v. FTC*, 799 F.3d 1108, 1116 (D.C. Cir. 2015).

Therefore, a requestor seeking a public-interest fee waiver must at least show that it can

"disseminate the disclosed records to a reasonably broad audience of persons interested in

the subject." *Id.* (citing *Carney*, 19 F.3d at 815).

The Court is limited to reviewing the information in the record—i.e., Doctors for

Choice's fee waiver request—to determine whether the denial was appropriate.  *See* 5

U.S.C. § 552(a)(4)(A)(vii).  And as Defendants explained, Doctors for Choice provided

almost no information in its request to demonstrate that it met any of these requirements

for entitlement to a fee waiver.  (*See* Doc. 29, at 38–39; Doc. 30, at App. 20–25.)  It

failed to "justify [its] entitlement to a waiver of fees in 'reasonably specific' and 'non-

conclusory' terms." *Nat'l Sec. Counselors v. U.S. Dep't of Justice*, 848 F.3d 467, 473–74

(D.C. Cir. 2017) (affirming denial of public-interest fee waiver because the organization

appeared to simply be a "clearing house" for the records it received through FOIA, as it

was not actively engaged in producing original publications, provided no information

about traffic to its website where it asserted it would post the records, and failed to

provide any concrete plans on how it would use the records received through FOIA).

Indeed, Doctors for Choice provided almost no insight that it would disseminate the

requested records to a "reasonably broad audience of persons interested in the subject."

*Cause of Action*, 799 F.3d at 1116. "That deficiency alone is a sufficient basis for

denying the fee waiver request." *Nat'l Sec. Counselors*, 848 F.3d at 474 (quoting *Larson*,

843 F.2d at 1483).

      Doctors for Choice has not—and cannot—demonstrate how, in the information

that was in the record before CDC at the time the agency denied the fee waiver, it had

demonstrated its entitlement to a fee waiver as to each required element. *See Voinche*,

983 F.2d at 668 n.3 (quoting 5 U.S.C. § 552(a)(4)(A)(iii)).  Therefore, Defendants are

also entitled to summary judgment on this issue, and this claim should also be denied in

its entirety.

### E.  Conclusion

      In sum, Defendants have demonstrated they should be granted summary judgment.

They performed an adequate search and properly withheld records under FOIA

Exemption 6.  Doctors for Choice's claim that Defendants failed to timely respond to its

administrative appeals is both inaccurate and moot.  And Doctors for Choice has failed to

demonstrate that it had proven all of the necessary criteria to be entitled to a fee waiver

based on the information available to Defendants at the time the fee waiver was denied.

      Therefore, for the foregoing reasons, and those in Defendants' Cross-Motion for

Summary Judgment and Response to Plaintiff's Motion for Summary Judgment, the

Court should grant summary judgment in Defendants' favor, deny Doctors for Choice's

motion for summary judgment, and enter final judgment in Defendants' favor dismissing Doctors for Choice's claims against Defendants with prejudice.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*/s/ Sarah E. Delaney*
Sarah E. Delaney
Assistant United States Attorney
Arizona Bar No. 031722
1100 Commerce Street, Third Floor
Dallas, Texas 75242-1699
Telephone:  214-659-8730
Facsimile:   214-659-8807
sarah.delaney@usdoj.gov

Attorneys for Defendants

## **CERTIFICATE OF SERVICE**

On December 29, 2023, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court.  I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

*/s/ Sarah E. Delaney*
Sarah E. Delaney
Assistant United States Attorney